*Brinkerhoff, C. J.
This is a petition in error, filed here by leave, to reverse the judgment of the court of common pleas ■of Hocking county. The plaintiff in error, who was also plaintiff below, brought his action against the defendant in error, alleging in liis petition, in substance, that he was a resident of Ohio,, the ■head of a family, and not the owner of a homestead; that he was “the owner of a team of horses, consisting of one black mare and one sorrel mare, which he had owned and used for the support of Ms family, and which was the sole and only team he owned;” that this team was levied on and sold by the defendant, as a constable, •under the authority of several executions against him, and in the hands of the defendant as such constable. “That at the time the •defendant took said chattel property the plaintiff demanded that *342 the same be set off to him by the defendant, as snch officer, in lieu of a homestead, which request was then and there refused by the-defendant.” He' avers that said property was unlawfully and wrongfully sold by the defendant, and that he sustained damages1 thereby to the amount of three hundred dollars, for which he demands judgment. To the petition the defendant demurred, on the-ground that it did not state facts sufficient to constitute a cause of action. On hearing, the demurrer was sustained, exception taken,, and this ruling of the court is here assigned for error.
The question thus presented is this: "Was this team of horses,, under the circumstances stated in the petition, exempt from execution under the provisions of the eighth section of the act of March 23, 1850, “to exenpt the homestead of families from forced sale on execution,” etc.? 2 Cur. Rev. Stat. 1520.
That section is as follows :
“ That it shall be lawful for any resident of Ohio, being the head' of a family, and not the owner of a'homestead, to hold exempt from execution or sale as aforesaid, mechanical tools, or a team and farming utensils, not exceeding *three hundred dollars in value, in addition to the amount of chattel property now by law exempt.”
The language of the statute, in its literal signification, is certainly very broad and sweeping in its provisions, and would exempt from execution the “ team ” of “ any resident of Ohio, being the head of a family, and not the owner of a homestead,” whether that team was •kept or intended for productive use, as an article of trade, or for purposes of pleasure merely; and without reference to the past, present, or intended occupation of the debtor, or the use which he has made, is making, or intends to make of the team.
But the majority of the court are of opinion that this literal interpretation would not accord with the true intent and meaning of the legislature, and that in order to arrive at the true intent and meaning, the words of this section must be interpreted in a sense somewhat qualified and restricted; and this from several considerations.
To interpret the language of this section in its broad and literal sense, would, it seems to me, be imputing to the legislature a manifest absurdity. In the first place, it is evident that it was not the intention of the legislature to allow every person described in this section to hold, by virtue of its provisions, property of any and *343 every description, not exceeding three hundred dollars in value, exempt from execution, in addition to property before exempt. The language of the section indicates no such intention ; and had such been the intention, it would have been so easy and so natural directly so to declare, that it surely would have been done. It is only the owners of mechanical tools, team, or farming utensils, who are thus favored. And why make them the special objects of legislative favor in this respect ? But one reason can be found for it, as it seems to me, and that reason is readily dednciblc from an inspection of the entire statute, and of statutes then and still in force in relation to the same *subject-matter. It was to enable the mechanic, the teamster, or the farmer, or whosoever else had these specified articles of property, and was using, or in good faith was intending to use them, as instruments of labor, as means of support for himself and the family of which he was the head, to do so. To discard such a qualification of the language of the statute, would bo to hold, that the merchant may hold mechanical tools, a team, or farming utensils, all for purposes of trade, and that the common gambler may hold his team of gay horses exempt from execution, for the mere pleasure of his worse than worthless life, while an honest laborer, or man of legitimate and useful business, not happening to be the owner of these favored articles, would be deprived of all exemptions, except such as were provided by pre-existing laws. Such resrrlts are equally abhorrent to our ideas of equal justice, and inconsistent with the evident policy of our laws on this subject. "We can not believe such to have been the intention of the legislature.
From the proceedings which appear in the record subsequent to the ruling complained of, as well as in that ruling, the court below seems to have been of opinion, that the exemption of a team provided for in this section of the statute, applies only in favor of persons engaged in the business of agriculture. The language of the statute being, “ mechanical tools, or a team and farming utensils,” and the words “ team ” and “ farming utensils ” being joined by the copulative conjunction, without anything in the punctuation to indicate their separation in the mind of the draftsman, the only serious doubt which the majority of the court entertain is, whether the legislature did not intend to confine the benefits of the section to two classes only, the mechanical and the farming. But, on the whole, as before indicated, we are of opinion that it includes the teamster as well. The presence or the absence of punctuation is of no weight *344 in the interpretation of statutes — it being often, if not generally, the work of engrossing clerks of the legislative body. And hero, the *mere placing of a comma after the word “ team,” would at once indicate to the mind of the reader a separation of the exempted articles into three instead of two classes. And, looking to the general scope and policy of our legislation on this subject, it seems to us reasonably apparent that it was intended to save to the head of a family his instrumentalities of productive -labor. Mechanics, transport, and agriculture, are the three great departments of productive industry; they are alike necessary, and alike pursued in almost every neighborhood of every civilized community; and unless compelled to do so, we are unwilling to adopt a construction which shall descriminate between them.
We therefore bold, that if a debtor bring himself fairly within either one, or two, or all three of these classifications, he is entitled to the exemptions named in this section.
But, whether we interpret this section in its broadest literal signification, or restrict its application in the manner for whichT have contended, we are all of the opinion, that the'ruling of the court, in sustaining the demurrer to the petition, was erroneous. We think that the allegations of the petitiofi demurred to, construed with the liberality which the code (sec. 114) prescribes, and the proof which might have boon introduced under it, might have brought the plaintiff fairly within the provisions of the statute when limited in its application, as a majority of the court think it ought to be. It' is true, the averments of the petition as to the plaintiff’s use of the team in question, are somewhat indefinite and uncertain; but the remedy for this was by motion to compel the plaintiff to !! require the pleading to be made definite and certain by amendment,” (code, see. 118), and not by demurrer.
The judgment in the case, and the order of the court below sustaining the demurrer to the petition, will be reversed, and the cause remanded for further proceedings.
Scott, Suture, Peck, and G-holson, JJ., concurred.